**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JOSEPH PAUL GUARNERI,

                        Plaintiff,

    v.                                         No. 05-CV-444
                                                  (GLS/DRH)

JOHN BATES, JR., Sheriff of Schoharie County; LT.
HAZZARD, Superintendent of Schoharie County Jail;
MR. SANTORO, First Sergeant of Schoharie County
Jail; MR. NEWMAN, Sergeant of Schoharie County
Jail; ROLAND HIRST, Deputy of Schoharie County
Jail; MR. GORDON, Deputy of Schoharie County Jail;
PAUL MARSH, JR., Deputy of Schoharie County Jail;
SCHOHARIE COUNTY JAIL MEDICAL DEPARTMENT;
and DR. WEITZ, Physician for Schoharie County Jail,

                        Defendants.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| JOSEPH PAUL GUARNERI<br>Plaintiff Pro Se<br>05-B-0213<br>Elmira Correctional Facility<br>Post Office Box 500<br>Elmira, New York 14902 | |
| GIRVIN & FERLAZZO, P.C.<br>Attorney for Defendants Bates, Hazzard,<br>   Santoro, Newman, Hirst, Gordon,<br>   Marsh, and Schoharie County Medical<br>   Department<br>20 Corporate Woods Boulevard<br>2nd Floor<br>Albany, New York 12211-2350 | GREGG T. JOHNSON, ESQ.<br>JACINDA HALL CONBOY, ESQ. |
| O'CONNOR, O'CONNOR, BRESEE<br>   & FIRST, P.C.<br> Attorney for Defendant Weitz<br>20 Corporate Woods Boulevard<br>Albany, New York 1221 | TERENCE P. O'CONNOR, ESQ.<br>JUSTIN O. CORCORAN, ESQ. |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Joseph Paul Guarneri ("Guarneri"), presently an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, eight Schoharie County employees and one physician, violated his right to medical care under the Eighth Amendment while guarneri was incarcerated at the Schoharie County Correctional Facility ("Schoharie"). Am. Compl. (Docket No. 5). Presently pending are the motions for summary judgment of the physician (Docket No. 71) and the County defendants (Docket No. 72) pursuant to Fed. R. Civ. P. 56. Guarneri opposes both motions. Docket No. 83. For the following reasons, it is recommended that both motions be granted.

### I. Background[2]

The facts are related herein in the light most favorable to Guarneri as the nonmoving party. See subsection II(A) infra.

Guarneri was incarcerated at Schoharie from January 5, 2004 until January 21, 2005. Am. Compl. at ¶ 2. On January 5, 2004, during the course of an arrest, Guarneri injured his

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Any reference to medical information is derived from the information attached as an exhibit in the public docket and not from the sealed medical records also on file with the Court.

2

shoulder.  Id. at ¶ 27; Guarneri Dep. (Docket No. 71, attachment 5)[3] at 20-21.  Guarneri complained of pain in his shoulder repeatedly upon his arrival at Schoharie, claiming that his rotator cuff had been torn.  Guarneri Depo. at 21-22, 41-42.  He received Motrin immediately upon his arrival but claims that he did not receive any additional medical attention for the following two weeks.  Id. at 37.  Guarneri repeatedly reiterated his complaints regarding his shoulder from June 2004 until his departure from Schoharie in January 2005.  Docket No. 72, attachment 7 at 5; Docket No. 74, attachment 14 at 36, 40, 58, 72; Guarneri Dep. 59-60, 65.

On January 10, 2005, Guarneri was sent for an orthopedic evaluation of his shoulder.  Docket No. 72, attachment 14 at 80.  The orthopedist, Dr. Friedman, noted "tenderness to palpation" but that "[f]lexion, internal rotation and adduction did not cause significant discomfort."  Id.  After performing an examination and reviewing X-rays of Guarneri's shoulder, Dr. Friedman concluded that there were no "significant bony patholog[ies]" and a "full-thickness rotator cuff tear [was] less likely based on [Guarneri's] good motor strength."  Id. at 80, 81.  Additionally, he recommended that "[c]onsideration could be given for physical therapy for right shoulder rehab . . . [and i]f [Guarneri] did not respond to therapy, consideration could be given for an eventual subacromial injection with steroid . . . ."  Id. at 81.  Moreover, a radiology review of the X-rays of Guarneri's right shoulder by Dr. Chun revealed that there was "[n]o evidence of fracture or significant arthritic change . . . [as well as n]o significant change of the right shoulder from the November 2002 right shoulder study."  Docket No. 72, attachment 14 at 74.

---

[3] This docket entry contains Guarneri's entire, unabridged deposition testimony.

3

Additionally, on August 24, 2004, Guarneri injured his right knee while playing basketball.[4] Am. Compl. at ¶ 27; Docket No. 72, attachment 8 at 2. Corrections officers carried Guarneri back to his cell where he was provided with ice to counteract the swelling. Guarneri Dep. at 90-92. Guarneri was examined shortly thereafter and advised that his pain had improved with the physician's assistant noting that the "patella move[d] freely without pain [and there was] no swelling." Docket No. 72, attachment 8 at 2. Guarneri was immediately provided with a Neoprene brace during the sick call, advised to stop playing basketball, and scheduled for X-rays to occur shortly thereafter. Guarneri Dep. at 96.

On September 26, 2004, Guarneri requested a McDavid Pro Stabilizer brace ("hinged knee brace") to replace the Neoprene brace he was currently wearing. Docket No. 72, attachment 10 at 2. The hinged knee brace had metal hinges on the medial and lateral sides of the knee to provide greater support and stability. Id. The physician's assistant believed that the current knee brace was sufficient but presented the request to defendant Weitz, who ordered an orthopedic consult. Id. Medical personnel also ordered the hinged knee brace. Docket No. 72, attachment 8 at 2; Hazzard Aff. (Docket No. 72, attachment 4) at ¶ 8. On November 11, 2004, Guarneri met with Dr. Friedman, the same orthopedist who evaluated his shoulder. Dr. Friedman noted that Guarneri appeared "to be in no acute distress . . . , walk[ed] with a normal gait . . . , [and] may be [experiencing] some mild lateral joint space narrowing on the right knee [but did not have] any obvious loose bodies" revealed by the most recent X-rays. Docket No. 72, attachment 9 at 3. Dr. Friedman also

---

[4] This was one of many knee injuries attributed to playing "rough basketball." Weitz Aff. at ¶¶ 12, 14. Due to these injuries and others, Guarneri had been advised to cease playing basketball. Id. at ¶¶ 12, 14, 16.

4

stated that there was "likely [a] chronic anterior cruciate ligament tear . . . ." Id. at 4. Dr. Friedman discussed surgical options, but Guarneri expressed no interest due to his desire first to pursue more conservative treatment alternatives.[5] Id.; Guarneri Dep. at 139, 158, 163. Dr. Friedman recommended physical therapy, "instruct[ing Guarneri] on quad sets, straight leg raises, and hamstring stretches" and that Guarneri cease playing basketball. Docket No. 72, attachment 9 at 4.

Guarneri continued to complain of pain and request physical therapy. Weitz Aff. (Docket No. 71, attachment 15) at ¶ 27. On December 6, 2004, Weitz examined Guarneri noting that he "walk[ed] without any difficulties[,] that both knees were without swelling or deformities[, and that t]he knee was stable, without skin changes [or] . . . synovial thickening." Id. at ¶ 27. On December 14, 2004, Schoharie received Guarneri's hinged knee brace but refused to give it to Guarneri because it failed to meet Schoharie's safety standards. Docket No. 72, attachment 11 at 2. "Based upon [Guarneri's] history of violence and aggressiveness[6] . . . [Defendant Hazzard] was concerned about [Guarneri] removing the metal rods [from the hinged knee brace] and using them to injure staff, other inmates, or himself." Hazzard Aff. at ¶ 10. However, after further discussion, it was

---

[5] Guarneri contends that he was entitled to receive physical therapy for his knee injuries although Dr. Friedman noted in his orthopedic consultation that none was available to him while incarcerated at Schoharie. Docket No. 72, attachment 9 at 4. Guarneri was, however, provided with ankle weights and counseled on therapeutic knee exercises. Docket No. 72, attachment 14 at 63; Docket No. 73, attachment 14 at 77.

[6] Included in defendants' motion to dismiss are seventy pages from Guarneri's tenure at Schoharie documenting violent behavior, including instances of inter alia threatening self-harm and physical harm to corrections officers, verbally assaulting a judge, and destroying Schoharie property by kicking down doors, punching lights, and throwing food and razors. Docket No. 72, attachments 15, 16.

5

decided that Guarneri was permitted to wear the hinged knee brace while in the medical cell unit and was precluded from wearing it only when he went to the library, church services or to receive medication.  Id.; Guarneri Dep. at 123.  In total, he was permitted to wear the brace for twenty-three hours a day.  Guarneri Dep. at 180.  Additionally, Guarneri had no restrictions imposed concerning the first Neoprene brace initially provided by Schoharie medical staff.  Id. at 179; Hazzard Aff. at ¶ 10.

On January 21, 2005, Guarneri "fell due to his knee giving out . . . ," so Schoharie sent Guarneri to the emergency room.  Docket No. 72, attachment 14 at 78.  Guarneri was diagnosed with a right knee contusion requiring ice, elevation, ibuprofen, and a follow-up visit if needed.  Docket No. 72, attachment 14 at 79.  Guarneri contends that at present, he suffers a total loss of right knee function without the assistance of the hinged brace or a cane and recent numbness in his right foot, originating six months ago from an unknown source.  Guarneri Dep. at 160.

## II.  Discussion

Guarneri asserts one cause of action, claiming deliberate indifference to a serious medical need in violation of the Eighth Amendment because defendants did not (1) follow Dr. Friedman's recommendations and (2) allow him to wear the hinged knee brace outside his cell.  Defendants contend that (1) there was no serious medical need or deliberate indifference and (2) they are shielded by qualified immunity

6

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).[7] However, the mere existence of some alleged factual dispute

---

[7]Guarneri nevertheless has substantial experience in federal litigation, having commenced at least seven other actions in this district since 1999. See U.S. Party/Case Index (visited Jan. 10, 2008) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment[8]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded

---

[8] Liberally construing Guarneri's response, he makes a fleeting reference to the denial of pain medication. During Guarneri's incarceration, there were a few instances of delay and confusion with the pharmacy, but there is no evidence that any such delays were intentional and they were corrected immediately. Docket No. 72, attachment 14 at 2, 5. Additionally, Guarneri made the conscious choice continually to refuse his medication, resulting in its termination. Docket No. 72, attachment 14 at 13, 44; Weitz Aff. at ¶¶ 14, 15, 16. Subsequently, three of the four medications Guarneri refused were reinstated to his treatment regimen. Docket No. 72, attachment 14 at 44, 50. Thus, it is undisputed in the record that defendants never intentionally denied Guarneri medication and this contention is without merit.

8

reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id. at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223 at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the

9

malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

### 1. Shoulder

As to the first prong of the analysis, Guarneri may have offered sufficient evidence to prove that his shoulder injury constituted a serious medical need.  Other cases suggest that allegations of "severe pain . . . [and] reduced mobility . . ."  in the shoulder are sufficient to raise a material issue of fact as to a serious medical need.  Sereika v. Patel, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006).  Additionally, when applying the aforementioned three-part test, it appears that Guarneri has demonstrated a serious medical need.

Guarneri contends that his alleged rotator cuff tear left him in severe pain and that he could not move his arm.  Any reasonable person or physician would agree that a rotator cuff tear which prohibits arm movement is worthy of medical treatment.  There is disagreement over the severity of Guarneri's pain from this injury.  Guarneri states that he voiced complaints about his severe shoulder pain immediately to medical staff during the first visit. Guarneri Dep. at 59-60, 65.  However, Guarneri's complaints of pain and immobility were not documented in the medical records until June 2004, over five months after the date of injury.  Docket No. 72, attachment 14 at 58.  Additionally, medical staff reported nine prior encounters with Guarneri, beginning the same month as the injury, without one documented complaint of severe shoulder pain.  Weitz Aff. at ¶ 4-15.

However, the first visit in January referenced the provision of medical care in a generic fashion.  Balanced against these first two factors, which appear to fall in favor of Guarneri, is the fact that the impact of Guarneri's shoulder injury did not appear to constrict either his

positive or negative activities of daily living.  Subsequent to his injury, Guarneri continued to play "rough" basketball leading to an armpit contusion and two knee injuries, one of which is the basis of the current claim.  Weitz Aff. at ¶¶ 12, 17, 18.  Thus, the alleged pain and immobility could not have been significant if Guarneri was still able repeatedly to participate in what at Schoharie at least was a contact sport.  Additionally, Guarneri was disciplined multiple times for punching lights and walls with his injured arm.  Docket No. 72, attachments 15, 16.  Thus, there appears to be sufficient issues of material fact concerning the actual pain and severity of the alleged shoulder injury.

However, even if Guarneri suffered a serious medical need, he has not offered evidence sufficient to prove that the defendants were deliberately indifferent.  Upon Guarneri's arrival at Schoharie, he was immediately provided with pain medication.  Additionally, he was seen by medical staff within two weeks.  Furthermore, after Guarneri made explicit complaints to the defendants concerning his shoulder pain, defendants took X-rays of Guarneri's spinal column and referred him for an orthopedic consult.  Both diagnostic tests were timely performed and revealed no abnormal results.[9]  The diagnostic tests indicated that (1) based on the degree of strength in his arms, a rotator cuff tear was unlikely, and (2) a comparison of X-rays performed in 2004 (after the alleged injury) with those performed in 2002 prior to the alleged injury showed no significant change in his right shoulder, arthritic or otherwise.  Docket No. 72, attachment 14 at 74, 80-81.

---

[9] Less than three weeks after complaining of neck and shoulder pain, and in response to Guarneri's continued complaints of back pain, the spinal X-ray was performed.  Weitz Aff. ¶¶ 4-7,14-15; Docket No. 72, attachment 14 at 40.  Additionally, after a complaint on November 24, 2004 and January 5, 2005, Guarneri was seen by an orthopedist on January 10, 2005.  Docket No. 72, attachment 14 at 58, 72 80-81.  Thus, defendants did not unreasonably or intentionally delay these consultations.

Thus, the record is uncontradicted that defendants did not deny or delay diagnostic testing or treatment once they were apprised of the problem. Guarneri's conclusory assertions that he received inadequate medical attention, absent other documentation, fails to constitute evidence sufficient to raise issues of fact. See Williams v. Coughlin, 650 F. Supp. 955, 957 (S.D.N.Y. 1997)(granting summary judgment where "plaintiff's affidavit and deposition . . . [did] not contain facts involving manifestations of . . .deliberate indifference. . . .").

Guarneri also contends that defendants should have followed Dr. Friedman's recommendations for physical therapy and steroid injections. However, these were offered as treatment options, not prescribed orders. Additionally, based upon Dr. Friedman's consultation, it does not appear that Guarneri was suffering from any tears in his shoulder. Thus, his injury was not as serious as Guarneri initially reported. Moreover, Weitz's extensive experience as a board-certified rheumatologist more than qualified him to determine whether steroid injections were appropriate. Simply because Guarneri placed more importance on Dr. Friedman's considerations and did not agree with Weitz's recommended course of treatment does not mean that Weitz was deliberately indifferent. Mere disagreement concerning the course of treatment is insufficient to support Guarneri's constitutional claim.

Defendants' motions on this ground as to Guarneri's claimed shoulder condition should be granted.

### 2. Knee

Guarneri has not offered evidence that the knee injury he sustained was serious.

Generally, knee injuries have been "insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." Johnson v. Wright, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (holding that a prisoner's torn meniscus suffered as result of a basketball injury was not a serious medical need) (quoting Moody v. Pickles, No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need); see also Williamson v. Goord, No. 02-CV-521(GLS/GHL), 2006 WL 1977438, at *9,14,16 (N.D.N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law").

This case is no different. Guarneri was not rendered immobile because he remained able to ambulate. Upon examination, both Drs. Friedman and Weitz noted that Guarneri appeared in no acute distress and could walk normally. Docket No. 72, attachment 9 at 3; Weitz Aff. at ¶ 27. Additionally, when presenting at the emergency room due to his knee "going out," after examination by other parties, Guarneri was only diagnosed with a bruise that required over- the-counter medication, ice, and rest. Docket No. 72, attachment 14 at 79. Thus, the allegations of pain and a chronic ACL tear do not constitute a serious medical need in these circumstances. Therefore, Guarneri's contentions concerning his knee injuries fail the first prong under the Eighth Amendment.

However, even if it can be argued that Guarneri suffered from a serious medical need, his claim fails to demonstrate deliberate indifference. Upon injury, Guarneri was immediately transported to his cell and provided with ice. Guarneri Dep. at 90-92. Medical

13

staff was notified and attended to him shortly thereafter. Docket No. 72, attachment 8 at 2. Guarneri was also provided with a brace to support his knee. Guarneri Dep. at 96. When Guarneri deemed the Neoprene brace insufficient, defendants arranged an orthopedic consultation and X-rays and ordered the hinged brace Guarneri requested. Docket No. 72, attachment 10 at 2; Hazzard Aff. at ¶ 8. Thus, it cannot be said on this record that defendants delayed or withheld appropriate treatment.

Guarneri further contends that defendants ignored the mandatory treatment recommendations by Dr. Friedman. However, these recommendations were only that. Defendants were not bound by these suggestions and were not deliberately indifferent simply because Guarneri believes he should have been provided a different course of treatment. Additionally, even though defendants were not bound to follow Dr. Friedman's recommendations, they nevertheless provided Guarneri with an alternative to the unavailable physical therapy services by supplying him with ankle weights and consultation concerning exercises which would strengthen his knee. Docket No. 72, attachment 14 at 63; Docket No. 73, attachment 14 at 77. Because Guarneri would have preferred that a therapist supervise him does not mean that the information and supplies provided to Guarneri constitute deliberate interference.

Guarneri also contends that defendants intentionally interfered and hindered his treatment by restricting the usage of the hinged knee brace to twenty-three out of the twenty-four hours in a day. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . . ." Bell v. Wolfish, 441 U.S. 520, 546 (1979). Prison officials "should be accorded wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547; see also Pell v. Procunier, 417 U.S. 817, 827 (1974) ("in the absence of substantial evidence in the record to indicate that the [prison] officials have exaggerated their response to these [security] considerations, courts should ordinarily defer to their expert judgment in such matters.").

Therefore, in light of Guarneri's aggressive and destructive history, it is reasonable to give defendants deference when reviewing their stated safety concerns about Guarneri wearing a brace with metal pieces in areas of general circulation. Based upon his past threats and actions, there was a reasonable possibility that Guarneri would hurt himself, another inmate, or a corrections officer. Maintaining institutional security and inmate safety compelled defendants to make these prohibitions on the hinged brace. However, these prohibitions were as least restrictive as possible. Guarneri was still allowed to wear the brace for all but one hour of the day. Thus, deference must be given to defendants' legitimate concerns for the penological safety and defendants did not intentionally interfere with treatment. In fact, defendants made as many concessions as possible to ensure that Guarneri was receiving optimal therapy.

Therefore, defendants' motions for summary judgment on this ground should also be granted.

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

15

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Guarneri's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, it is recommended in the alternative that defendants' motions on this ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motions for summary judgment (Docket Nos. 71, 72) both be **GRANTED** and the judgment be entered for all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 10, 2008
       Albany, New York

*David R. Homer*
United States Magistrate Judge